Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Courtney Stuart-Alban (SBN 225513)
csalban@blakelylawgroup.com
courtneyalban@gmail.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, CA 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiffs*
*Grupo Panam de México S.A.,*
*and Panam USA, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANAM USA, LLC., and GRUPO PANAM DE MÉXICO S.A. DE C.V, a Mexican Corporation<br><br>Plaintiff,<br><br>vs.<br><br>PAN AMERICAN WORLD AIRWAYS, INC., individually and dba PAN AM BRANDS, a Delaware Corporation; PAN AM SYSTEMS, INC., a Florida corporation, and Does 1-10, inclusive,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT; CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS** |

Plaintiffs Panam USA, LLC ("Panam USA") and Grupo Panam de Mexico, S.A. de C.V., a Mexican Corporation ("Panam de Mexico") (collectively "Plaintiffs") hereby bring the following action.

**Nature of the Action**

1. This is an action for Declaratory Judgment of Non-Infringement of Trademark and for Cancellation of Trademarks held by defendants based on equitable principles of forfeiture, estoppel, and abandonment.

2. As alleged in further detail below, Plaintiffs are imminently poised to enter the Los Angeles market to sell casual, athletic shoes, under the trademark

1
**PLAINTIFFS' COMPLAINT FOR EQUITABLE RELIEF**

PANAM DE MÉXICO.  Plaintiff Panam de México is a family-owned business that holds several foreign registrations for the PANAM Mark and has sold shoes under the PANAM trademark in Mexico and other countries in Latin America and Europe since 1962.

3. Defendants, however, exclaim exclusive rights in the common word Pan Am (which, in the way Defendants use it, is short for the word Pan American) based on their use of trademarks originally used by the Original Pan American World Airways to operate commercial airline services.  There is no possibility that consumers would be confused between the marks used by Defendants, which are long-associated in the public consciousness as source designators for the now-defunct Pan Am World Airways, and the use proposed by Plaintiffs, which is limited to the sale of casual footwear.  Moreover, Defendants have forfeited the right to use any of the Original Pan Am World Airways trademarks because Defendants do not offer any airlines services and do not retain any of the goodwill that the public associates with the Original Pan Am World Airways Marks such that Defendants' use of the Original Pan Am trademarks amounts to a deception on the American public, as explained in detail below.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this claim pursuant to the Federal Trademark Act of 1946, as amended (the "Lanham Act"), et seq., and 28 U.S.C. §§ 1331 and 1338(a) in that this action arises under, and requires interpretation of, the Lanham Act.  There is also complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is also brought under the Declaratory Judgment Act, 28 U.S.C. § 28201(a).

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Plaintiff Panam USA is based in this District, and the proposed sale of Plaintiffs' acclaimed tennis shoes is expected to commence in this District with a

distributor who is also based in this District, with its first expected purchase order from a national shoe company whose corporate offices are also in this District.

6. Personal jurisdiction over defendants is proper because, among other reasons, defendants do business within the State of California sufficient to subject them to the personal jurisdiction of this Court, including, but not limited to promoting and offering for sale merchandise under the original Pan Am World Airways brand through businesses located in this District.

## The Parties

7. Plaintiff Panam de México is a family-owned Mexican corporation that has been manufacturing and selling casual, athletic shoes in connection with the PANAM brand since 1962. Panam de México has several foreign trademarks for PANAM. Panam de México has had the PANAM mark registered in the United States in the past and is currently preparing to launch the sale of its popular footwear in the United States.

8. Plaintiff Panam USA is a California corporation and affiliate of Panam de México created for the purpose of facilitating the promotion and sale of PANAM-branded footwear in the United States.

9. Defendant Pan American World Airways, Inc., individually and doing business as Pan Am brands, is upon information and belief, a Delaware corporation having a principal place of business in New Hampshire whose principals include Robert B. Culliford, David A. Fink, Eric H. Lawler, Richard S. Kelso, and Timothy Mellon.

10. Defendant Pan Am Systems is, upon information and belief, a Florida corporation having its principal place of business in New Hampshire at the same address as Pan Am Brands whose principals also include Robert B. Culliford, David A. Fink, Eric H. Lawler, Richard S. Kelso, Timothy Mellon, and Armstrong D. Fink. Pan Amercian World Airways, Inc. and Pan Am Systems are collectively referred to as the "PWA Defendants."

11. Does 1-10 are natural or legal entities whose identities are currently unknown but who claim an interest in the PAN AM Marks adverse to Plaintiffs' intended use of those marks. Plaintiffs will amend this Complaint to allege the true names and capacities of the fictitiously-named defendants when and if the same have been ascertained.

### Allegations Common to All Claims

12. Upon information and belief, Defendant Pan Am World Airways is a Delaware corporation doing business as Pan Am Brands and is a distinct corporate entity from, and does not provide any of the same services, or retain any of the goodwill associated with, the world famous and now-defunct Pan American World Airways (the "Original Pan Am World Airways").

### The Original Pan American World Airways

13. The Original Pan Am World Airways was notable as the first American airline to operate commercial jet airliners within the continental United States as early as 1931, and it continued to offer its world-renowned commercial flight services until it declared bankruptcy in 1991.

14. The original Pan American World Airways operated its airline transportation services first using the word mark PAN AM, and shortly thereafter, using a blue and white meridian globe in a light blue and white color combination (the "Original Pan Am World Airways Globe") as depicted below:



(collectively, the "Original Pan Am World Airways Trademarks.").

15. Upon information and belief, the Original Pan Am World Airways Trademarks are widely associated in the minds of consumers as source designators for the commercial airlines services that were formerly provided by the Original Pan Am World Airways, but which are no longer provided, to the American public.

16. In or about 1991, upon information and belief, the Original Pan Am World Airways declared bankruptcy, liquidated its assets, and ceased operation of all of its commercial flight services.

17. As a result of the bankruptcy in 1991, upon information and belief, most of the Original Pan Am World Airways' assets, including its commercial airplanes, were purchased by Delta airlines and reemployed for use by Delta, which had formerly been a competitor of the Original Pan Am World Airways, and which continues in existence as a commercial airline today.

18. Thereafter, in or about 1993, upon information and belief, the Original Pan Am World Trademarks were transferred, without an accompanying transfer of assets, to a new entity, which then began doing business as Pan Am World Airways, albeit on a much more limited basis (this entity is hereafter referred to as "Pan Am World Airways II").

19. Upon information and belief, in or about 1998, Pan Am World Airways II declared bankruptcy, and as a result of those proceedings, was acquired by Guilford Transportation Industries, Inc. ("Guiliford Transportation").

20. In or about 1998, after Guiliford Transportation acquired Pan Am World Airways II, upon information and belief, it attempted a third resurrection of the Original Pan Am World Airways brand through the introduction of a new airline (hereafter referred to as "Pan Am World Airways III").

21. On or about October 7, 1999, upon information and belief, Guiliford Transportation commenced operations of Pan Am World Airways III, with a very limited fleet of just seven (7) Boeing 727s, which offered flights to secondary airports

in just nine (9) cities in New England, Florida, the Canadian Maritimes and Puerto Rico.

22. In or about September 2004, upon information and belief, the Air Line Pilots Association ("ALPA") brought legal action against Guilford Transportation and two of its subsidiaries in the U.S. District Court for New Hampshire, alleging that Guiliford was illegally attempting to transfer airline routes from the unionized Pan Am World Airways III to another non-unionized subsidiary of Guiliford, Boston-Maine Airways Corp. ("BMAC").

23. Upon information and belief, the ALPA succeeded in obtaining a court-ordered injunction that stopped the transfer of 727 operations from Pan Am III to its non-unionized subsidiary, BMAC, and also forced Guiliford and Pan Am III to cease violating the status quo with respect to rates of pay, rules and working conditions of Pan Am III pilots.

24. Thereafter, on or about November 1, 2004, upon information and belief, Guilford skirted the legal effect of the court-ordered injunction by transferring its interest in Pan Am III to its subsidiary, BMAC, which then resumed offering Boeing 727 service under the Pan Am Clipper Connection brand on or about February 17, 2005.

25. In or about 2006, upon information and belief, Guilford changed its name to Pan Am Systems, which is a named defendant in this action, and which may provide some limited rail cargo service but which does not provide any air transportation services.

26. On or about February 1, 2008, upon information and belief, the U.S. Department of Transportation revoked BMAC's certification of Pan Am Airways III, finding that: "BMAC's authority to operate large aircraft was based on false financial information submitted to the department, without which the air carrier would not have been found fit to hold such authority when it first sought to expand," and further that "BMAC's management knew, or should have known, about the false financial

information and it, therefore ... lacks the competence necessary to oversee the air transportation authorized in the air carrier's certificate."

27. On or about February 29, 2008, after Pan Am III's certification was revoked by the Department of Transportation, upon information and belief, Pan Am Systems ceased the provision of any and all airline services, including the limited remaining flight services that had briefly been provided by its subsidiary, BMAC, under the Pan Am Clipper Connection brand.

<u>There is No Continuity Between the Original Pan Am and Defendants</u>

28. Defendant Pan Am World Airways, doing business as Pan Am Brands (hereafter "Pan Am Brands"), upon information and belief, has not provided any airline services, whether commercial or carrier, inside or outside of the United States, since at least on or about 2008, and it has no reasonable prospect of resuming any such airline services.

29. Pan Am Brands, upon information and belief, does not provide any services at all to the American public.

30. Pan Am Brands, upon information and belief, does nothing more than make token use of the Original Pan Am World Airways Trademarks by offering to license them to others for use on some niche-market, novelty items to evoke nostalgia for the now, long-defunct Original Pan Am World Airways.

31. The entire business of Pan Am Brands is, upon information and belief, to sell kitsch merchandise to consumers to recall the prior legacy of the Original Pan Am World Airways, a company that does not currently exist and has not existed since 1991.

32. Indeed, as Pan Am Brands explains on its website "Long after the airline closed its doors, the legacy lives on."

33. Although there is no continuity between the airline services provided by the Original Pan Am World Airways and Defendant Pan Am World Airways, d/b/a Pan Am Brands, Defendant Pan Am World Airways continues to hold federal

trademark registrations for the Original Pan Am World Airways Trademarks in the following international classes 16 (pens; writing utensils, blank cards; greeting cards; note cards); 14 (watches; cufflinks); 18 (luggage tags; purses; all-purpose carrying bags; carry-on bags; make-up bags sold empty; messenger bags; tote bags; travel bags; wallets; diaper bags; gym bags; luggage; and travel bags); 21 (mugs; cups); 41 (entertainment services in the nature of an on-going dramatic television program; and 25 (shirts; jackets; sweat shirts, t-shirts, and belts); 39 (for transportation by rail, freight transportation by rail, rental, leasing and chartering of vehicles, rental, leasing and chartering vehicles and apparatus for locomotion by rail).

34. Upon information and belief, Pan Am Brands does not have any retail stores nor does it manufacture or create any goods.

35. Pan Am Brands, upon information and belief, does not use, nor does it allow others to use, the PAN AM word mark on its own, without the accompanying meridian globe.

36. Pan Am Brands, upon information and belief, does not use, nor does it allow others to use, the PAN AM word mark without the space between PAN and AM.

37. Pan Am Brands does not have a federal trademark to sell footwear, nor, upon information and belief, does Pan Am Brands offer footwear, nor has it ever offered footwear, for sale.

### Plaintiffs' Panam de México Brand

38. Plaintiff Panam de México is a family-owned Mexican corporation that has manufactured and sold casual, athletic shoes in connection with the PANAM brand since on or about 1962.

39. Plaintiff Panam de México owns the domain name panam.com.mx and operates a website located at www.panam.com.mx where it advertises and promotes its iconic footwear to its myriad fans.

40. Plaintiff Panam de México manufactures and sells millions of shoes every year within Mexico and in other countries worldwide.

41. Plaintiff Panam de México has maintained branding partnerships with other well-known brands, including by way of example, The Walt Disney Company, Levi Strauss & Co., Mattel, Inc., and the Frida Kahlo estate.

42. By way of example, Plaintiff Panam de México currently sells shoes in connection with the Frida Kahlo estate, with the iconic Frida Kahlo images adhered onto the shoes, as depicted below.



43. Plaintiff Panam de México has several foreign trademark registrations for PANAM and has also had the "PANAM" mark registered in the United States in the past.

44. In its 40+ years of operation, Panam de México is aware of <u>no</u> instances of consumer confusion with the trademarks used by the now-defunct Original Pan Am Airways, including during the time when the Original Pan Am was a fully operational airline with flights to and from Mexico City.

45. Panam de México has never sold any other product other than its signature casual, athletic shoes under its PANAM brand name and it does not intend to introduce products other than its staple, casual athletic footwear.

46. Plaintiffs have never offered for sale, and do not intend to offer for sale, any travel-related goods or services.

47. At present, Plaintiffs are uniquely poised to introduce their cult-classic, casual athletic shoes for sale in Los Angeles using the PANAM DE MÉXICO word mark and the following design mark:



48. An example of the type of shoe sold by Panam de México is depicted below:



### First Claim for Relief

### (For Declaratory Judgment of Non-Infringement Against All Defendants)

49. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1-48 above.

50. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning the PWA Defendants' contention that they have rights based on their extinguished relationship with the nonexistent Original Pan Am World Airways, such to exclude Plaintiffs from launching the sale of their footwear, which is already widely-popular around the world and with the U.S. Hispanic-population within the United States.

51. The PWA Defendants have **no legitimate rights** in the Original Pan Am World Airways Trademarks, and cancellation should be awarded, as requested below, but even if such rights did exist, there would be no basis for confusion with Plaintiffs' marks.

52. The trademarks as depicted below, and as would be presented in the United States marketplace (if the PWA Defendants actually continue to sell goods in the United States) are not similar or confusing.

53. Plaintiffs do not use and will not use any form of a globe in their Mark; Plaintiffs use a red-and-blue, as opposed to a blue-and-white, color scheme; Plaintiffs intend to use the De México designation as a component of their mark in the United States; and Plaintiffs' mark is all one word as opposed to two words separated by a space, which is the script that the PWA Defendants employ.

54. Moreover, in addition to the PWA Defendants' ill-begotten registrations, there are a voluminous number of federal trademark registrations using the common Pan Am and Pan American designations as a component of their trademarks, making this a "crowded field" that limits protection to competitors providing the exact same type of goods.

55. Further, notwithstanding the fact that the PWA Defendants should not be permitted to retain *any* trademark rights by virtue of their wholesale departure and "drastic alteration" from the goods and services offered by the Original Pan Am World Airways, as pled below, even if their rights were legitimate, they do not have any federal registration for footwear, which is the *only* type of goods that will be offered for sale by Plaintiffs.

56. There is quite simply no likely possibility that consumers will be confused into believing that the shoes depicted below derive from the no-longer-existent Original Pan Am World Airways or the PWA Defendants.



57. Plaintiffs, along with the interest of additional California investors and distributors, are actively deployed to launch the sale of Plaintiffs' iconic footwear in Los Angeles. The PWA Defendants must not be permitted to block a business that could potentially bring significant tax revenue to the State of California in favor of their miniscule offerings of chintzy items bearing the logo of an airline that has not been in existence since 1991.

## Second Claim for Relief

## (Cancellation of the Original Pan Am Marks Held by the PWA Defendants )

58. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1- 54 above.

59. The PWA Defendants continue to use the Original Pan Am World Airways Trademarks, although there has been a "substantial change" in the goods and services that were originally offered under the Original Pan Am World Airways Trademarks and what remains of Pan Am Brands, and this change "has so altered the nature of the good will symbolized that use of the marks is tantamount to a fraud on consumers and the original right to the mark is abandoned or lost." *See* J. McCarthy, Trademarks and Unfair Competition §§ 17:9 and 18:8 at 783-85 and 815-16.

60. The limited goods and services offered by the PWA Defendants, none of which include airline flight services, results in a use of the Original Pan Am Trademarks on "a product that is so different from the old that to allow continued use of the mark would 'work a deception upon the public.'" *Bambu Sales, Inc. v. Sultana*

*Crackers*, Inc. 683 F.Supp. 899, 906 (EDNY 1988) (citing 3 R. Callmann, The Law of Unfair Competition Trademarks and Monopolies, § 19.40 at 176); *see also Pan American World Airways v. The Flight 001,* 2007 LEXIS 51012 7th Dist. NY July 13, 2007.

61. The PWA Defendants do not have the right to use the Original Pan Am Trademarks, except as the symbol for the particular goods, namely commercial airline flight services, that were offered by the Original Pan Am World Airways. *See* Callmann, § 78.1(a) at 426.

62. The public associates the Original Pan Am World Airways Trademarks exclusively with the airline services provided by the Original Pan Am World Airways, and to permit the PWA Defendants to continue to use the Original Pan Am World Airways Trademarks for their novelty goods or rail services amounts to a deceit. *See Pepsico, Inc. v. Grapette Co.,* 416 F.2d 285, 289 (8th Cir. 1969).

63. The PWA Defendants have forfeited their rights and must be estopped from continuing to use the Original Pan Am Trademarks on a "wholly different product which is palmed off on the public in place of that upon which the good will has been established." *Mulhens & Kropff v. Ferd Muelhens, Inc.* 38 F.2d 287, 293 (1929).

64. The change in the goods and services from the world-class international commercial airlines services formerly offered by the Original Pan Am World Airways and the paucity of novelty items offered by the PWA Defendants today is a "drastic alteration" such that the PWA Defendants have "forfeited any rights they have held" in the Original Pan Am World Airways Trademarks. *Bambu Sales, supra*, 683 F.Supp. at 906 (EDNY 1988).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendant as follows:

1. For a declaratory judgment that Plaintiffs' proposed sale of footwear under its PANAM DE MÉXICO Mark and accompanying design will not infringe any of Defendants' purported trademark rights.

2. For cancellation of any and all trademarks owned or used by Defendants that incorporate the Original Pan Am World Airways Trademarks, in any fashion, including without limitation, Registration Numbers: 3804943; 4155834; 4458350; 3288129; 3171135; 4649411; 4340092; 4354102; and 4405886.

3. For any and all other relief that this Court may see fit.

Dated: March 4, 2015                BLAKELY LAW GROUP

                                    By: _____
                                    Courtney L. Stuart-Alban
                                    *Attorneys for Plaintiffs*